UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL TAFOLLA,<br><br>    Petitioner,<br><br>    v.<br><br>JAQUEZ, Warden,<br><br>    Respondent.<br>_____/ | No. C-10-0593 EMC (pr)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION

Petitioner seeks federal habeas relief from his state convictions. For the reasons stated herein, the petition for such relief is **DENIED**.

## II.    BACKGROUND

In 2005, a Sonoma County Superior Court jury convicted Petitioner of murder and attempted murder, consequent to which he was sentenced to 77 years-to-life in state prison. Petitioner was denied relief on state judicial review. This federal habeas petition followed.

Evidence presented at trial shows that in 2005, Petitioner argued with Daniel Camargo-Vierya (Camargo), and Camargo's friends Jose Tello and Victor Prado, at a taco truck. Petitioner, who was being driven by co-defendant Adan Valdovinos, followed Camargo to his house, where the two sets of men started fighting. Petitioner shot at Camargo and Tello, striking and killing the first, and missing the second.

///

///

As grounds for federal habeas relief, Petitioner claims that (1) the trial court forced him to choose between constitutional rights; (2) the evidence was insufficient to support the conviction for first degree murder; (3) the evidence was insufficient to support the conviction for attempted murder; and (4) the use of the CALCRIM No. 220 and No. 222 violated his right to due process.

### III. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409. Under the "unreasonable determination" clause, a federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

1   presented in the State court proceeding." 28 U.S.C. § 2254 (d)(2). The federal court must presume
2   as correct any determination of a factual issue made by a state court unless the petitioner rebuts the
3   presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In sum, the
4   relevant question under § 2254(d)(2) is whether an appellate panel, applying the normal standards
5   of appellate review, could reasonably conclude that the state court findings are supported by the
6   record. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004).

### IV. DISCUSSION

A. Admission of Gang Evidence

Petitioner claims that the trial court violated his right to present a defense by predicating the admission of gang evidence on Petitioner testifying, thereby forcing him to choose between presenting a defense and remaining silent.

There is no factual support for this claim. Defense counsel sought to admit evidence that Camacho and Tello belonged to a gang, and both counsel referred to gang involvement in their opening statements. The trial court, in denying admission of such evidence, concluded that defense counsel's two offers of proof on this point were insufficient, but stated that it would revisit the issue of admission if more evidence came to light. Petitioner bases his claim on the following exchange between defense counsel and the trial judge:

> [Counsel said] 'I would like to inquire that my assumption or my understanding of the Court's ruling was that should there be further offer of proof that the Court might change its ruling. And may I inquire that as an offer of proof if my client were to testify in this particular matter as to various items that [ ] might result in the required offer of proof?' The court responded, 'I'd have to say yes to the question in general terms, sure.'

(Ans., Ex. C at 9.)

Nothing here shows that Petitioner was forced to choose between two constitutional rights. The only plausible reading is that the court indicated its willingness to consider Petitioner's offer to testify as a factor in making its ruling. It cannot plausibly be read as "If Petitioner does not testify, the evidence will not come in." Rather, the court's statement was provisional and nonspecific ("in a general sense"). Moreover, the court was merely responding to the defense counsel's query, not establishing the court's own precondition to admission of the evidence. The state appellate court

concluded similarly. (Ans., Ex. C at 12.) The state appellate court's factual determination, then, was not objectively unreasonable; nor, then, was its legal conclusion unreasonable. Accordingly, as there is no factual support for Petitioner's claim, it is DENIED.

B. <u>Sufficiency of the Evidence</u>

Petitioner claims that there was insufficient evidence to support his (A) first degree and (B) attempted murder convictions. A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Nor does a federal habeas court in general question a jury's credibility determinations, which are entitled to near-total deference. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). Indeed, if confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* Rather, the federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne*, 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *See Jackson*, 443 U.S. at 324. "Sufficiency claims on federal habeas review are subject to a "twice-deferential standard." *Parker v. Matthews*, 132 S. Ct. 2152, 2148 (2012) (per curiam). First, relief must be denied if, viewing the evidence in the light most favorable to the prosecution, there was evidence on which "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 324). "The only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012). Second, a state court decision denying a sufficiency challenge may not be overturned on federal habeas unless the decision was "objectively unreasonable." *Matthews*, 132 S. Ct. at 2148 (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011)).

///

///

4

### 1. First Degree Murder

In his claim that there was insufficient evidence of first degree murder, Petitioner asserts that the gun fired accidentally, and that there was no direct evidence of a plan or preconceived design to kill.

The state appellate court found ample evidence to support a first degree murder conviction, and rejected Petitioner's claim:

> [T]here is abundant evidence to support the inference that [Petitioner] killed Camargo with premeditation and deliberation. After the altercation at the taco truck, [Petitioner] armed himself with a loaded shotgun and went to Camargo's house with Valdovinos. When they arrived, Valdovinos encouraged [Petitioner] to get out of the car and to confront Camargo and Tello. Meanwhile, Valdovinos prepared the car for a quick escape. Then [Petitioner] confronted the victims. He pumped a round of ammunition into the shotgun chamber, raised the gun to his chest, and pointed it at Camargo. From this evidence, a "jury could infer that defendant 'considered the possibility of murder in advance'" and intended to kill Camargo. [Citations removed.] A reasonable juror could also infer that [Petitioner] had a motive for killing Camargo: to effect revenge for Camargo's taunts at the taco truck. In connection with this motive, the manner of killing supports a finding of premeditation and deliberation. [Petitioner] placed the end of the shotgun against Camargo's stomach. When the gun went off and hit Camargo in the chest, [Petitioner] answered Camargo's question – "what are you going to do, shoot me[?]" – in the affirmative.

(Ans., Ex. C at 15.)

In California, first degree murder is the premeditated and deliberate unlawful killing of another with malice aforethought. *See* Cal. Penal Code §§ 187 & 189. A premeditated killing under California law is a "killing [that] was the result of preexisting reflection and weighing of considerations rather than mere unconsidered or rash impulse." *People v. Prince*, 40 Cal. 4th 1179, 1253 (2007) (citations omitted). The process of premeditation and deliberation "does not require any extended period of time." *People v. Koontz*, 27 Cal. 4th 1041, 1080 (2002) (citations omitted). "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." *Id.* Planning activity, motive and the manner of the killing are significant, though not the exclusive, factors to consider when determining whether the killing was a result of preexisting reflection. *Prince*, 40 Cal. 4th at 1253 (citations omitted).

5

Under these legal principles, Petitioner's habeas claim cannot succeed. The record supports the conclusion that a rational trier of fact could have found the elements of premeditation and deliberation true beyond a reasonable doubt. As the state appellate court determined, Petitioner followed Camacho to his house after the taco truck altercation, loaded his gun, pointed it at Camacho, and pulled the trigger. This evidence reasonably supports the jury's determination that there was premeditation and deliberation. Put another way, there is evidence that Petitioner followed Camacho with the plan to kill him as revenge for insults received earlier which in turn shows that the homicide was the product of preexisting reflection. This record shows that the jury's findings were not so insupportable as to fall below the threshold of rationality, and that they were not objectively unreasonable. Accordingly, Petitioner's claim must be DENIED.

2. <u>Attempted Murder</u>

Petitioner bases his insufficiency claim on his assertion that claims that the evidence was insufficient to support his conviction for the attempted murder of Tello. He asserts that he had no preconceived design to kill Tello and that he shot at him "only as an afterthought, in response to Tello's shouting."

The state appellate court found ample evidence to support an attempted murder conviction, and rejected Petitioner's claim:

> There was sufficient evidence that [Petitioner] premeditated and deliberated before attempting to kill Tello. At the taco truck, Tello challenged [Petitioner and Valdovinos] by yelling, "What the fuck" and by throwing two bottles at Valdovinos's car. After the altercation, [Petitioner] went to Camargo's house with a loaded shotgun. From this evidence, a jury could reasonably infer that [Petitioner] planned to kill Tello to punish him for his taunts at the taco truck. There was additional evidence of premeditation and deliberation once [Petitioner] realized that Tello witnessed Camargo's murder. After [Petitioner] shot Camargo, Tello yelled, "What the fuck did you do?" and in response, [Petitioner] turned around, pointed the gun at Tello, and shot at him. Accordingly, the evidence "suggest[ed] rapid but purposeful planning activity once [Petitioner] realized the potential consequences" of Tello's presence at the scene of the murder. [Citation omitted.] A jury could reasonably infer that [Petitioner] was motivated to kill Tello to eliminate him as a witness.

(Ans., Ex. C at 16–17.)

6

Under California law, a person commits attempted murder when he (1) makes a direct but ineffective act toward killing another person, and (2) has the specific intent to kill that person. *People v. Guerra*, 40 Cal. 3d 377, 386 (Cal. 1985).

Under these legal principles, Petitioner's habeas claim cannot succeed. The record supports the conclusion that a rational trier of fact could have found the elements of a direct but ineffective act toward killing Tello, and the specific intent, as shown by his premeditation and deliberation, true beyond a reasonable doubt. As the state appellate court determined, Petitioner followed Camacho and Tello to his house after the taco truck altercation, and shot at Tello as revenge for the slights at the taco truck. A rational jury could also conclude that Petitioner wanted to eliminate Tello as a witness. This evidence reasonably supports the jury's determination that there was premeditation and deliberation. Put another way, there is evidence that Petitioner followed Camacho and Tello with the plan to kill them as revenge for insults received earlier, and had a motive to kill Tello to eliminate him as a witness to the shooting of Camacho, all of which supports a finding of specific intent to kill Tello. This record shows that the jury's findings were not so insupportable as to fall below the threshold of rationality, and that they were not objectively unreasonable. Accordingly, Petitioner's claim must be DENIED.

C. <u>CALCRIM Nos. 220 and 222</u>

Petitioner claims that the use of CALCRIM No. 220, when read in conjunction with No. 222, prevented the jury from considering a lack of evidence in deciding whether reasonable doubt existed. The state appellate court disposed of this claim on state law grounds.

CALCRIM No. 220, as read to Petitioner's jury, is:

> The fact that a criminal charge has been filed against the defendants is not evidence that the charge is true. You must not be biased against the defendants just because they have been arrested, charged with a crime, or brought to trial. [¶] A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove each element of a crime and special allegation beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially

> compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendants guilty beyond a reasonable doubt, they are entitled to an acquittal and you must find them not guilty."

(Ans., Ex. C at 17.) The trial court also delivered CALCRIM No. 222, which defines "[e]vidence" as "the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else [the trial court] told you to consider as evidence." (*Id.*)

California courts have routinely rejected as unreasonable Petitioner's interpretation of the interaction of these instructions: "[n]othing about the instructions given implies to the jury that the defendant must adduce evidence that promotes reasonable doubt or that the defendant must persuade the jury of his or her innocence by evidence presented at trial." *People v. Flores*, 153 Cal. App. 4th 1088, 1093 (Cal. Ct. App. 2007).

To obtain federal collateral relief for errors in the jury charge, a Petitioner must show that the disputed instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* In other words, a federal habeas court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

Petitioner is not entitled to habeas relief on this claim. First, the plain language of the instructions clearly conveyed to the jury that if the evidence presented was insufficient to establish an element of a crime beyond a reasonable doubt, such lack of evidence would require an acquittal. Second, there is nothing in the instruction that relieves the prosecution of its burden to present evidence to prove Petitioner's guilt beyond a reasonable doubt. Third, the other instructions reinforce the appropriate standard of proof and the prosecution's burden. For example, the jury was clearly instructed that it must presume Petitioner innocent and that this presumption could be overcome only if the evidence proved him guilty beyond a reasonable doubt. (Ans., Vol. 17 at 925–26.) If the evidence did not meet this standard, the jury was directed to acquit Petitioner. (*Id.*)

These instructions render unreasonable any assertion that the disputed instruction prevented the jury from considering a lack of evidence in deciding whether reasonable doubt existed. Jurors are presumed to follow their instructions. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). Accordingly, this Court must presume that the jurors followed the instructions and applied the proper standard. Accordingly, this claim is DENIED.

## V. CONCLUSION

The state court's adjudication of Petitioner's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is **DENIED**.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of Respondent, and close the file.

IT IS SO ORDERED.

Dated: November 6, 2012

_____
EDWARD M. CHEN
United States District Judge